**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SYLVESTER SHIRLEY,

      Plaintiff,                                  Case No. 11-14297

v.                                            Hon. Gerald E. Rosen

CITY OF EASTPOINTE, BRIAN DEAL,
OFFICER MERLO, and OFFICER KONAL,

      Defendants.

_____/

**OPINION AND ORDER REGARDING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____August 30, 2013_____

PRESENT:  Honorable Gerald E. Rosen
                   Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiff Sylvester Shirley commenced this action in this Court on September 29,

2011, asserting federal and state-law claims against the Defendant City of Eastpointe and

three Eastpointe police officers arising from the Defendant officers' alleged use of

excessive force against Plaintiff in an October 2, 2009 incident outside an Eastpointe bar.

This Court's subject matter jurisdiction rests upon Plaintiff's assertion of claims under 42

U.S.C. § 1983 alleging violations of his rights under the U.S. Constitution.  *See* 28 U.S.C.

§ 1331.

Through the present motion filed on July 31, 2012, the Defendant law enforcement officers and the City of Eastpointe seek an award of summary judgment in their favor on each of the claims asserted against them in Plaintiff's complaint.  In support of this motion, Defendants argue primarily (i) that the force used by Defendant Eastpointe police officer Brian Deal to subdue and arrest Plaintiff was appropriate under the circumstances; (ii) that Plaintiff's deposition testimony as to the degree of force used in his arrest may properly be discounted on a number of grounds; (iii) that there is no evidence that the two remaining Eastpointe officers named as Defendants in the complaint, Thomas Konal and Matthew Merlo, inflicted any force whatsoever on Plaintiff in the course of his arrest; and (iv) that Plaintiff has failed to identify a policy or custom of the Defendant City that was the moving force behind any alleged violation of his federal constitutional rights.  In response, Plaintiff contends:  (i) that his deposition testimony gives rise to genuine issues of fact as to whether the Defendant police officers used excessive force in connection with his arrest; (ii) that his plea of no contest to a state-law charge of resisting and obstructing does not preclude him from pursuing his federal § 1983 claims of excessive force; (iii) that the mere presence of Officers Konal and Merlo at the scene of his arrest permits the imposition of liability against them on the ground that they failed to take action to halt the alleged infliction of excessive force by their fellow officer, Defendant Deal; and (iv) that the record supports the imposition of liability against the Defendant City for its alleged failure to train and discipline its officers.

Defendants' motion has been fully briefed by the parties.  Having reviewed the

2

parties' briefs and their accompanying exhibits, as well as the remainder of the record, the Court finds that the relevant allegations, facts, and legal issues are sufficiently presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendants' motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As will soon become clear, the two sides in this suit offer sharply divergent accounts of the events surrounding the October 2, 2009 arrest of Plaintiff Sylvester Shirley. Although the Court must view the record in a light most favorable to Plaintiff in resolving Defendants' summary judgment motion, the Court nonetheless summarizes the two different versions of the pertinent events as advanced by Plaintiff and Defendants in their respective briefs.

**A.    Plaintiff's October 2, 2009 Arrest**

On October 1, 2009, Plaintiff smoked marijuana at his home and then went with his cousin, Derrick Shirley, to the Marz Bar in Eastpointe, Michigan, arriving at around 11:00 p.m. While at the bar, Plaintiff drank three or more Long Island iced teas along with some beer, and he acknowledges that he was intoxicated.

At around 12:40 a.m., Plaintiff was approached by three employees of the bar and asked to leave the premises. Although Plaintiff has testified that he is "not sure" why these three bouncers asked him to leave the bar and that nothing unusual was happening

3

at the time, (Plaintiff's Response, Ex. A, Plaintiff's Dep. at 140-42), the bouncers have stated in affidavits that Plaintiff was harassing female patrons or was otherwise engaged in inappropriate conduct.  Plaintiff testified at one point that he voluntarily accompanied the bouncers to the door of the bar, and that the bouncers did not put their hands on him or otherwise physically lead him out of the bar.  (*See id.* at 145-46.)  He later testified, however, that one of the bouncers threw a blanket over his head on his way to the door, and that the bouncers then led him the rest of the way to the exit.  (*See id.* at 155-58.)

According to Plaintiff, once he and the bouncers reached the exit, one of the bouncers opened the bar door and the other two "grabbed me and threw me out [of] the bar."  (*Id.* at 145-46.)  Immediately after the bouncers shoved him out the door, Plaintiff testified that he was grabbed by two police officers and thrown to the ground outside the bar.  (*See id.* at 147-48.)  As Plaintiff was lying on his stomach, the two officers stood at either side of him and began to punch, kick, and stomp on him.  (*See id.* at 149, 153, 162-63.)  The officers then handcuffed Plaintiff and applied a taser to his back after he had been handcuffed.  (*See id.* at 163, 165-66.)  Throughout this interaction with the police officers, Plaintiff testified that he does not recall the officers telling him to cease fighting, get on the ground, or stop resisting.  (*See id.* at 152, 215.)  Nor does he recall being warned that the officers were going to deploy a taser.  (*See id.* at 167.)

Plaintiff was largely unable to identify the two officers who inflicted this mistreatment.  He testified that the officers were white, taller than him, and wore blue uniforms, and that one of them had a goatee.  (*See id.* at 150-51.)  Beyond this, however,

4

Plaintiff was unable to describe the officers, and he testified that he would not be able to identify them if he saw them again or tell "one officer from the other." (*Id.* 150-52, 171-72, 183, 219-20, 225.) At one point during his deposition, Plaintiff stated that the officers were from two different police departments, Eastpointe and Warren, but he later testified that he was not sure whether they were Warren or Eastpointe officers, or even whether their uniforms were blue. (*See id.* at 222, 226, 248, 309.) Plaintiff also could not say which of the two officers initially threw him to the ground, handcuffed him, or tased him, nor did he know whether the same officer both handcuffed and tased him or how many times he was tased. (*See id.* at 148, 167, 216, 218-20, 222-23, 247-49.) Indeed, Plaintiff was unable to say for sure how many police officers were outside the bar when the bouncers removed him, testifying that he observed "[a]t least two" officers. (*Id.* at 155.)

The bar bouncers and Defendant police officers advance a far different account of their interactions with Plaintiff on the night in question. According to Defendant Eastpointe police officer Brian Deal, he had just begun his shift in a one-man patrol vehicle shortly after midnight on October 2, 2009 when he pulled into the parking lot for the Marz Bar and observed a "commotion" as three bar employees escorted a patron out of the premises. (*See* Defendants' Motion, Ex. C, Deal Dep. at 17-20.) Officer Deal testified that the patron was "yelling profanities," "saying he wanted to get back into the bar," and "flailing his arms around trying to push his way back into the bar" as the bouncers attempted to "move him out." (*Id.* at 20-21.)

When the patron, subsequently identified as Plaintiff, started "physically

5

assaulting" and "punching" the bouncers "multiple times" in an attempt to get back into the bar, Officer Deal decided to intervene and got out of his squad car, determining at that point that Plaintiff "was going to jail." (*Id.* at 23-25.) As Officer Deal approached the scene, he ordered Plaintiff to "stop fighting" and "get to the ground," and the bouncers "[p]hysically grabbed" Plaintiff and "took him to the ground." (*Id.* at 26-28.)[1] According to Officer Deal, Plaintiff continued to "flail[] about" and tried to get back up as the bouncers held him down on his stomach, and Officer Deal identified himself as a police officer and ordered Plaintiff to "stay down, place his hands behind his back, relax, cooperate, [and] calm down." (Deal Dep. at 28-29.)

When Plaintiff continued to resist these commands, Officer Deal advised him "probably . . . three or four times" that he would use his taser if Plaintiff did not cooperate and put his hands behind his back. (*Id.* at 29-30.) Plaintiff instead placed his hands underneath his body, and Officer Deal responded by using his taser to apply a "drive stun" lasting "[t]wo to five" seconds, which caused Plaintiff to "compl[y] immediately" and put his hands behind his back so that the officer was able to handcuff him. (*Id.* at 30-33.) Officer Deal, with the assistance of the bouncers, then lifted Plaintiff off the ground and placed him in the officer's squad car. (*See id.* at 34.)

Before Officer Deal had exited his squad car to intervene in the altercation

_____

[1]Two of the bouncers likewise have stated in affidavits that Plaintiff was "verbally abusive" toward them as they escorted him out of the bar, that he began to punch the bouncers in an effort to get back into the bar, and that the bouncers ultimately "took [Plaintiff] down to the ground in order to stop his physical attack upon [them]." (Defendants' Motion, Ex. B, Dean Valenti Aff. at ¶¶ 6-9; Ex. D, Robert Barrett Aff. at ¶¶ 5-8.)

6

between Plaintiff and the bouncers, he had called for backup assistance. The two other Defendant Eastpointe police officers, Thomas Konal and Matthew Merlo, have testified that by the time they arrived at the Marz Bar, Plaintiff had already been handcuffed. (*See* Defendants' Motion, Ex. E, Konal Dep. at ; Ex. F, Merlo Dep. at 23.) Officer Konal testified that he spoke to one of the bouncers, but did not speak to or interact with Plaintiff at the scene. (*See* Konal Dep. at 16-17.) Officer Merlo was generally unable to recall what actions, if any, he took at the scene of Plaintiff's arrest.

According to Officer Deal, he transported Plaintiff back to the Eastpointe police station, but was unable to complete the booking process because Plaintiff was being uncooperative, refusing to answer questions and "yelling and screaming." (Deal Dep. at 37-38.)[2] Plaintiff was placed in a "bullpen," where he got into an altercation with one or more of the other arrestees being held in this same cell. Although Plaintiff has testified that his fellow arrestees were upset with him for making noise and waking them up and that one of them "jumped up" and "swung at me," after which the two men exchanged blows, (Plaintiff's Dep. at 175-77), the bullpen video attached as an exhibit to Defendants' motion reveals that Plaintiff initiated the altercation by approaching his fellow arrestees and gesturing at them as they remained seated or lying on their bunks, and by confronting and slapping one of the arrestees across the face while he was seated

---

[2]Plaintiff has acknowledged that he refused to be booked and processed, that he used combative words and "cuss[ed] the police off," and that he "probably" called the lieutenant who was assisting in this process a "honky" and "white trash." (Plaintiff's Dep. at 172-75.) Plaintiff further testified that he was agitated, still intoxicated, and making a lot of noise during this process. (*Id.* at 175-76.)

7

and then punching another arrestee who was lying down on an adjacent bunk, (*see* Defendants' Motion, Ex. H, Bullpen Video.)

## B.     The Criminal Proceedings Against Plaintiff

In the wake of his October 2, 2009 arrest, Plaintiff was charged with three counts of assault and battery, one count of resisting and obstructing a police officer, and one count of disorderly conduct.  At an October 16, 2009 hearing before a state district court judge, Plaintiff pled no contest to one of the three counts of assault and battery and to resisting and obstructing a police officer.  As the factual basis for this plea, Plaintiff's counsel stipulated to the police report of Plaintiff's arrest prepared by Officer Deal.  (*See* Defendants' Motion, Ex. I, 10/16/2009 Plea Hearing Tr. at 6-7.)[3]  In the course of this plea hearing, Plaintiff's counsel explained that his client "may be subject to violence and

---

[3]Officer Deal's police report states in pertinent part:

> I radioed for assistance and exited my scout car.  [The three bouncers] were able to move Shirley outside.  I ordered Shirley several times to stop fighting and to get down on the ground.  I told him he was under arrest and ordered him several times to relax and move to the ground.  He continued to fight with the three employees.  I warned Shirley several times that if he did not cooperate I would Taser him.  The three employees were able to move Shirley to the ground but Shirley refused to place his hands behind his back.  I then applied a drive stun to Shirley[']s upper back/shoulder area for a few seconds.  The Taser took proper effect and Shirley quit fighting and placed his hands behind his back. I then handcuffed him.

> Officer Merlo and Konal arrived to assist.  I then placed Shirley into the rear of my scout [car] and transported him to the station.  I noted that I could smell the odor of intoxicants emanating from the rear of the scout car as I traveled with Shirley.

(Defendants' Motion, Ex. J, Officer Deal Police Report at 5.)

blackouts" when he is drinking, and that Plaintiff's "recollection of this incident, of this whole night, i[s] very vague."  (10/16/2009 Plea Hearing Tr. at 8.)[4]

## III.  ANALYSIS

### A.    The Standards Governing Defendants' Motion

Through the present motion, the three Defendant law enforcement officers and their employer, the Defendant City of Eastpointe, seek an award of summary judgment in their favor on Plaintiff's federal claims under 42 U.S.C. § 1983 and his state-law claims of assault and battery and gross negligence.  Under the Federal Rule governing this motion, summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a light most favorable to the party opposing the motion, giving that party the benefit of all

---

[4]Apart from the charges brought against Plaintiff for his conduct outside the Marz Bar, Plaintiff also was charged with one count of aggravated assault and one count of ethnic intimidation arising from his attack on his fellow arrestees in the Eastpointe police station bullpen.  Plaintiff pled guilty to both of these charges.

reasonable inferences." *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir. 2007). Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "[a] mere scintilla of evidence is insufficient" to withstand a summary judgment motion; rather, "there must be evidence on which the jury could reasonably find for the non-moving party." *Smith Wholesale,* 477 F.3d at 861 (internal quotation marks and citation omitted).

**B.     Plaintiff's No Contest Plea in State Court Does Not Preclude Him from Pursuing His Federal Fourth Amendment Claims of Excessive Force.**

Plaintiff's federal § 1983 claims against the Defendant police officers rest on the allegation that these officers "employed unnecessary and unreasonable excessive force and/or failed to intervene and stop the use of such unreasonable force" during Plaintiff's October 2, 2009 arrest.  (Complaint at ¶ 18.)  As a threshold challenge to these claims of excessive force, Defendants contend that Plaintiff's plea of no contest to a pair of state-law charges stemming from this arrest — *i.e.,* charges of assault and battery and resisting and obstructing a police officer — operates to defeat his § 1983 claims against the Defendant officers on various estoppel-related grounds.  For the reasons discussed below, however, Defendants' appeal to principles of estoppel cannot succeed under the facts and circumstances presented here.

In seeking to give preclusive effect to Plaintiff's state-court plea of no contest, Defendants begin with the decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364 (1994), in which the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  512 U.S. at 486-87, 114 S. Ct. at 2372 (footnote omitted).  As the Sixth Circuit has explained, "*Heck*

11

bars § 1983 plaintiffs from advancing claims that, if successful, would necessarily imply the invalidity of a prior conviction or sentence." *Cummings v. City of Akron,* 418 F.3d 676, 682 (6th Cir. 2005) (internal quotation marks and citation omitted).  Defendants argue that the ruling in *Heck* precludes Plaintiff from pursuing his § 1983 claims of excessive force because success on these claims would purportedly be inconsistent with Plaintiff's conviction on a state-law charge of resisting and obstructing a police officer.

As Plaintiff points out, however, Defendants' appeal to *Heck* is defeated by the Sixth Circuit's recent ruling in *Schreiber v. Moe,* 596 F.3d 323, 334-35 (6th Cir. 2010). In that case, the plaintiff "pleaded no contest in Michigan state court to attempting to 'assault, batter, wound, resist, obstruct, oppose, or endanger' a police officer under Michigan Compiled Laws § 750.81d(1) and § 750.92." *Schreiber,* 596 F.3d at 328.  He then brought a § 1983 suit against the officer who arrested him on this state-law charge, asserting claims of false arrest, false imprisonment, illegal entry into his home without a warrant, unlawful seizure, and the use of excessive force.

The district court held that the plaintiff's § 1983 claim of excessive force was barred by the ruling in *Heck,* in light of the plaintiff's conviction on the state-law charge of attempting to resist arrest.  The Sixth Circuit reversed, finding that the plaintiff's success on his claim of excessive force would not necessarily imply the invalidity of his state-court conviction:

> Generally speaking, a claim of excessive force does not necessarily relate to the validity of the underlying conviction and therefore may be immediately cognizable.  Indeed, in Michigan, one can be convicted under

12

§ 750.81d(1) simply for a "knowing failure to comply with a lawful command," Michigan Compiled Laws § 750.81d(7)(a), and the mere failure of [the plaintiff] to obey a police order would not have made the force [the defendant police officer] allegedly used reasonable.  There are two circumstances, however, in which an excessive-force claim might conflict with a conviction.  The first is when the criminal provision makes the lack of excessive force an element of the crime.  The second is when excessive force is an affirmative defense to the crime, as was true in the case upon which the district court relied, *Cummings v. City of Akron,* 418 F.3d 676, 684 (6th Cir. 2005) (noting that an assault conviction barred an excessive-force claim because the plaintiff did not raise excessive force as a defense).  In both of these circumstances, the § 1983 suit seeks a determination of a fact that, if true, would have precluded the conviction.

Nothing in the text of Michigan Compiled Laws § 750.81d(1) or § 750.92 suggests that the state must prove as an element of the offense that the police did not use excessive force.  Indeed, the Court of Appeals of Michigan has found that a lawful arrest is not one of the elements of § 750.81d(1).  *People v. Ventura,* 262 Mich. App. 370, 686 N.W.2d 748, 752 (2004).  Furthermore, one recent Michigan case has strongly suggested that excessive force by the police is not a defense to a resisting-arrest conviction, *People v. Hill,* No. 283951, 2009 WL 1830750, at *3 (Mich. Ct. App. June 25, 2009) (stating that there is no authority for the proposition that the "use of excessive force by police is a valid defense to resisting and obstructing"), and several others have left unresolved the question of whether excessive force is a defense.  *See, e.g., People v. Burks,* No. 284467, 2009 WL 1693743, at *2 (Mich. Ct. App. June 16, 2009); *People v. Rauch,* No. 263185, 2006 WL 3682754, [at] *3-4 (Mich. Ct. App. Dec. 14, 2006).  In light of these state court of appeals decisions, we cannot conclude that any excessive force used by [the defendant officer] would have provided [the plaintiff] with an affirmative defense to the charge of resisting an arrest.

We conclude that under these circumstances, [the plaintiff's] § 1983 excessive-force claim does not challenge his conviction for attempting to resist his arrest.

*Schreiber,* 596 F.3d at 334-35 (internal quotation marks and citations omitted); *see also*

*Rogers v. Detroit Police Department,* 595 F. Supp.2d 757, 768-70 (E.D. Mich. 2009)

13

(also concluding that a conviction under Michigan law for resisting and obstructing a police officer is not necessarily inconsistent with a claim that the officer used excessive force in the course of an arrest).

The ruling in *Schreiber* applies with full force here.  There, as in this case, the plaintiff pled no contest to a charge under Michigan law of resisting and obstructing a police officer.  Yet, the Sixth Circuit held in *Schreiber* that the plaintiff's claim of excessive force, if successful, would not necessarily imply the invalidity of his state-court conviction for resisting and obstructing.  Likewise, in this case, *Heck* does not preclude Plaintiff from proceeding with his § 1983 claims of excessive force, because his success on these claims would not necessarily lead to the conclusion that his state-court conviction for resisting and obstructing a police officer is invalid.

The cases cited by Defendants in support of their motion are not to the contrary. In arguing that Plaintiff's state-court conviction should preclude him from recovering on his claims of excessive force, Defendants rely principally on the decision in *Walker v. Schaeffer,* 854 F.2d 138, 142-43 (6th Cir. 1988) — a ruling that pre-dates *Heck* but rests on somewhat similar reasoning — in which the Sixth Circuit held that the plaintiffs' pleas of no contest to state-law charges of disorderly conduct and reckless driving estopped them from pursuing federal § 1983 claims of false arrest and false imprisonment.  The court explained that the plaintiffs had a "full and fair opportunity" in the state court proceedings to litigate "the issues involving whether [the defendant police officers] falsely arrested and/or falsely imprisoned" them, and that they therefore were estopped

14

"from now asserting in federal court that the defendant police officers acted without probable cause," as necessary to prevail on their § 1983 theories of false arrest and false imprisonment. *Walker,* 854 F.2d at 142.

Yet, in *Walker* and each of the other cases cited by Defendants, *see Nicholson v. City of Westlake,* No. 01-3144, 20 F. App'x 400, 402 (6th Cir. Sept. 24, 2011); *Peterson Novelties, Inc. v. Clinton Township,* No. 98-2083, 2000 WL 1091487, at *2-*3 (6th Cir. July 27, 2000); *Sandul v. Larion,* No. 94-1233, 1995 WL 216919, at *4 (6th Cir. Apr. 11, 1995), the plaintiffs were pursuing § 1983 claims of false arrest, false imprisonment, or malicious prosecution, and the courts reasoned that the plaintiffs' state-court convictions precluded them from establishing the absence of probable cause that was an essential element of their § 1983 theories of recovery. Here, in contrast, Plaintiff's conviction for resisting and obstructing a police officer does not necessarily negate any element of his § 1983 claim of excessive force — as explained in *Schreiber,* 596 F.3d at 334-35, success under this theory of excessive force does not necessarily imply the invalidity of Plaintiff's state-court conviction. Not surprisingly, then, in addition to the ruling in *Schreiber,* a number of Sixth Circuit and Eastern District of Michigan decisions recognize that a conviction for resisting and obstructing a police officer does not preclude a plaintiff, whether under *Heck* or principles of estoppel, from pursuing a § 1983 claim of excessive force arising out of the arrest that led to the plaintiff's conviction. *See, e.g., Karttunen v. Clark,* No. 08-1858, 369 F. App'x 705, 708 (6th Cir. Mar. 16, 2010); *Miller v. Village of Pinckney,* No. 09-1096, 365 F. App'x 652, 654-55 (6th Cir. Feb. 18, 2010); *Henry v. City*

15

*of Eastpointe Police Department,* No. 11-10192, 2013 WL 1395851, at *9-*10 (E.D. Mich. Mar. 7, 2013); *Gottage v. City of St. Clair Shores,* No. 10-11049, 2012 WL 1079798, at *5 (E.D. Mich. Mar. 30, 2012), *aff'd,* No. 12-1480, 2013 WL 4034417 (6th Cir. Aug. 9, 2013); *Marmelshtein v. City of Southfield,* No. 07-15063, 2009 WL 648499, at *3 & n.8 (E.D. Mich. Mar. 11, 2009); *Green v. Dupuis,* No. 04-71145, 2005 WL 2739378, at *6 (E.D. Mich. Oct. 24, 2005).

Next, as a variation on their appeal to *Heck,* Defendants suggest that Plaintiff's claim of excessive force is defeated by principles of collateral estoppel or judicial estoppel, in light of the admissions purportedly made by Plaintiff in connection with his plea of no contest to a state-law charge of resisting and obstructing a police officer. Specifically, at Plaintiff's state court plea hearing, his counsel stipulated to Officer Deal's October 2, 2009 police report for purposes of establishing a factual basis for Plaintiff's no contest plea.  (*See* Defendants' Motion, Ex. I, 10/16/2009 Plea Hearing Tr. at 6-7.)  In Defendants' view, the facts disclosed in this police report are inconsistent with Plaintiff's claim of excessive force and his deposition testimony in support of this claim, where Officer Deal states in this report (i) that he first intervened in the altercation between Plaintiff and three Marz Bar employees when he witnessed Plaintiff "pushing and swinging" at the bouncers as they attempted to escort him from the bar, (ii) that Plaintiff disregarded Officer Deal's orders "to stop fighting and to get down on the ground," and instead "continued to fight with the three [bar] employees," (iii) that Plaintiff "refused to place his hands behind his back" and disregarded Officer Deal's several warnings "that if

16

he did not cooperate I would Taser him," and (iv) that in light of this refusal to cooperate despite repeated warnings, Officer Deal "applied a drive stun" with his taser "to [Plaintiff's] upper back/shoulder area for a few seconds," causing Plaintiff to "quit fighting and place[] his hands behind his back" so that the officer could handcuff him. (Defendants' Motion, Ex. J, Officer Deal Police Report at 4-5.)  Defendants contend that under the doctrines of collateral estoppel and judicial estoppel, Plaintiff is precluded from contesting or relitigating these facts set forth in Officer Deal's report, with the result that his § 1983 claim of excessive force lacks a factual basis and must be rejected as a matter of law.[5]

---

[5]Although the parties do not address the point, the Court notes as an aside that Defendants' proposed reliance on Plaintiff's no contest plea and the statements of his counsel at his state court plea hearing might be viewed as problematic under Fed. R. Evid. 410(a), which provides in pertinent part:

> In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
> > (1)  a guilty plea that was later withdrawn;
> > (2)  a nolo contendere plea; [or]
> > (3)  a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure.

Under the plain language of this Rule, Plaintiff's plea of no contest and the statements of his counsel at the state court plea hearing seemingly would not be admissible against him in this civil suit.

The Sixth Circuit's ruling in *Walker,* 854 F.2d at 143, however, construes Rule 410(a) in a manner that permits Defendants to rely on this evidence as support for their motion.  As discussed earlier, the court held in that case that the plaintiffs' pleas of no contest to state-law charges of disorderly conduct and reckless driving estopped them "from now asserting in federal court that the defendant police officers acted without probable cause" in arresting them.  *Walker,* 854 F.2d at 142.  The court then observed:

The lynchpin of this appeal to principles of estoppel, however, is that by virtue of Plaintiff's plea of no contest and the stipulation given by his counsel at the state court plea hearing, Plaintiff admitted to facts which are inconsistent with his § 1983 claim of excessive force.  Indeed, in the brief in support of their motion, Defendants flatly assert that under Michigan law, "a no contest plea is an admission to the factual basis for the criminal charge."  (Defendants' Motion, Br. in Support at 11.)  Yet, in the case cited by Defendants as support for this proposition, the Michigan Court of Appeals states **precisely the opposite,** explaining that although a plea of no contest "subjects a defendant to all the

---

> We do not consider our conclusion to be barred by Fed. R. Evid. 410, which provides that evidence of "a plea of nolo contendere" is not, "in any civil or criminal proceeding, admissible against the defendant who made the plea."  This case does not present the kind of situation contemplated by Rule 410:  the use of a nolo contendere plea against the pleader in a subsequent civil or criminal action in which he is the *defendant.*  In this case, on the other hand, the persons who entered prior no-contest pleas are now plaintiffs in a civil action.  Accordingly, use of the no-contest plea for estoppel purposes is not "against the defendant" within the meaning of Fed. R. Evid. 410.  This use would be more accurately characterized as "for" the benefit of the "new" civil defendants, the police officers.

> We find a material difference between using the nolo contendere plea to subject a former criminal defendant to subsequent civil or criminal liability and using the plea as a defense against those submitting a plea interpreted to be an admission which would preclude liability.  Rule 410 was intended to protect a criminal defendant's use of the nolo contendere plea to defend himself from future civil *liability.*  We decline to interpret the rule so as to allow the former defendants to use the plea offensively, in order to obtain damages, after having admitted facts which would indicate no civil liability on the part of the arresting police.

*Walker,* 854 F.2d at 143 (citation omitted) (emphasis in original).  Accordingly, under *Walker's* reading of Rule 410(a), Defendants may properly appeal to Plaintiff's no contest plea and the statements of his counsel at the state court plea hearing to support their defense against the § 1983 claims asserted by Plaintiff in this case.

18

consequences of a conviction, a defendant, by so pleading, ***does not admit the facts constituting the crime charged.***"  *People v. Graham,* 55 Mich. App. 590, 223 N.W.2d 80, 82 (1974) (emphasis added).  Additional case law identified in the Court's own research confirms this principle of Michigan law.  *See, e.g., Lichon v. American Universal Insurance Co.,* 435 Mich. 408, 459 N.W.2d 288, 298 (1990) (explaining that "[t]he taking of [a] nolo contendere plea cannot be considered 'actual litigation,' at least not in terms of collateral estoppel jurisprudence," because "[t]he essence of a nolo contendere plea is in its name, 'nolo contendere,' or 'I will not contest it,'" and "[i]f the charges are uncontested, they are necessarily unlitigated"); *Miller,* 365 F. App'x at 655 (observing that the plaintiff in that case "admitted no facts when she pleaded no contest" (citing *Graham*)); *Blackburn v. Grai,* No. 08-11597, 2009 WL 3164715, at *7 (E.D. Mich. Mar. 11, 2009), adopted in 2009 WL 3125872, at *3 (E.D. Mich. Sept. 28, 2009); *Green,* 2005 WL 2739378, at *6.  This clear Michigan law governing pleas of no contest defeats Defendants' effort to rely on the stipulations of counsel at Plaintiff's state court plea hearing as a basis for arguing that Plaintiff is barred from "relitigating" the facts surrounding his October 2, 2009 arrest.[6]

---

[6]Before leaving this issue, the Court feels compelled to express its dismay at the failure of defense counsel to fulfill their obligations of accurately stating the legal principles governing their clients' motion and disclosing controlling legal authority that is directly adverse to the positions advanced in support of this motion.  *See* Michigan Rule of Professional Conduct 3.3(a).  As noted earlier, defense counsel flatly misrepresented the holding of the Michigan Court of Appeals in *Graham*, and this misstatement of Michigan law was crucial to Defendants' appeal to principles of estoppel as a basis for defeating Plaintiff's § 1983 claim of excessive force.  In addition, defense counsel made no effort in Defendants' motion and accompanying brief to acknowledge the Sixth Circuit's ruling in *Schreiber* or explain why this decision should not be

**C.    Plaintiff Has Failed to Produce Any Evidence That Defendants Merlo or Konal Were Involved in the Alleged Use of Excessive Force Against Him, or That They Were in a Position to Intervene Against the Use of Such Force.**

In his complaint, Plaintiff alleges that each of the three Defendant Eastpointe police officers participated to some extent in the infliction of excessive force upon him in connection with his October 2, 2009 arrest.  Yet, two of these Defendants, Officers Merlo and Konal, have testified that Plaintiff had already been placed under arrest and handcuffed before they arrived on the scene.  Defendants contend that nothing in the record contradicts this testimony or otherwise provides a basis for holding Officers Merlo and Konal liable for any alleged use of excessive force in the course of Plaintiff's arrest. The Court agrees.

It is a well-established principle of federal § 1983 law that "[e]ach defendant's liability must be assessed individually based on his own actions."  *Binay v. Bettendorf,* 601 F.3d 640, 650 (6th Cir. 2010).  In the specific context of § 1983 claims of excessive force, while a plaintiff need not show that each defendant officer "actively participated in striking" him, an officer who has not directly inflicted harm may be held liable for

---

entitled to controlling weight, despite the evident similarity of the facts in the two cases and the clear impact of *Schreiber's* legal rulings on the issues raised in the present motion.  Defense counsel can hardly claim to be unfamiliar with *Schreiber,* where the firm that represents Defendants here was counsel of record in two above-cited cases, *Gottage* and *Henry,* in which courts in this District recognized this Sixth Circuit decision as dictating that a no contest plea to a state-law charge of resisting and obstructing does not preclude a § 1983 claim of excessive force.  Counsel are strongly cautioned that these sorts of violations of the duty of candor to the Court will not be tolerated, and that their submissions in this and future cases will be carefully scrutinized to ensure that there are no further transgressions of the standards governing the conduct of counsel.

"fail[ing] to act to prevent the use of excessive force" by other officers only if "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Smoak v. Hall,* 460 F.3d 768, 784 (6th Cir. 2006) (internal quotation marks and citation omitted).  Similarly, under the state-law theories of recovery advanced in Plaintiff's complaint, the imposition of liability against a given Defendant police officer requires a showing of this specific officer's involvement in the unlawful conduct that caused injury to Plaintiff.  *See, e.g., Garretson v. City of Madison Heights,* 407 F.3d 789, 801 (6th Cir. 2005) (holding that one of the defendant officers did not act in a manner deemed grossly negligent under Michigan law, where he was unaware of the plaintiff's medical condition or need for treatment); *Hammond v. Northwest Airlines,* No. 09-12331, 2010 WL 2836899, at *3 (E.D. Mich. July 19, 2010) (holding that a defendant flight attendant could not be held liable for assault and battery, where there was no evidence that this defendant "ever touched either plaintiff or put them in fear of a battery").

Applying these principles of individual liability to the facts of this case, it is clear that Plaintiff has failed to identify a basis in the record for going forward with his federal or state-law claims against Defendants Merlo and Konal.  As noted, these two Defendant officers have testified that by the time they arrived at the Marz Bar, Plaintiff was already handcuffed and they played no role in restraining or arresting him.  (*See* Defendants' Motion, Ex. E, Konal Dep. at 16-17; Ex. F, Merlo Dep. at 21-24.)  Consistent with this testimony, Defendants also have produced the affidavits of two bouncers stating that only

21

one police officer was involved in the arrest and handcuffing of Plaintiff, and that two more Eastpointe officers arrived only after Plaintiff had been arrested and placed in handcuffs.  (*See* Defendants' Motion, Ex. B, Valenti Aff. at ¶¶ 10-16; Ex. D, Barrett Aff. at ¶¶ 9-14.)

Although Plaintiff testified at his deposition that two police officers threw him to the ground after he was escorted from the Marz Bar and then proceeded to punch, kick, and stomp on him, and that one or both of these officers tased him after he had been handcuffed, this testimony does not give rise to a genuine issue of material fact that could subject Officers Merlo or Konal to liability.  As recounted earlier, Plaintiff was largely unable to identify the two officers who inflicted this force on him, stating only that they were white, taller than him, and wore blue uniforms, and that one of the officers had a goatee.  (*See* Plaintiff's Response, Ex. A, Plaintiff's Dep. at 150-51.)  At another point in his deposition, however, Plaintiff stated his belief that the officers were from two different police departments, and he could not say for certain whether their uniforms were blue.  (*See id.* at 222, 226.)  More generally, Plaintiff could not describe the two officers in any detail, and he testified that he would not be able to identify them if he saw them again or tell "one officer from the other."  (*Id.* at 150-52, 171-72, 183, 225.)

While this testimony, combined with the remainder of the evidence in the record, would permit the conclusion that Officer Deal was one of the two officers who allegedly inflicted the mistreatment complained of by Plaintiff, nothing in Plaintiff's testimony (or elsewhere in the record) would enable a trier of fact to identify the ***second*** officer

22

involved in this incident.  Plaintiff's deposition testimony provides no basis upon which a trier of fact could ascertain whether this second officer was Officer Konal, Officer Merlo, or an altogether different officer (perhaps from a different police department) — to the contrary, Plaintiff acknowledged that he himself would not be able to identify either of the two officers if he saw them again.  Neither is there any other evidence in the record that could give rise to an inference that Officer Konal or Officer Merlo was the second officer referenced in Plaintiff's testimony.[7]  Against this evidentiary backdrop, it would be a matter of pure speculation for a trier of fact to conclude that Officer Konal or Officer Merlo was the second police officer involved in the alleged infliction of excessive force upon Plaintiff.  Under comparable circumstances, where the record would not permit the identification of particular officers who participated in an alleged use of excessive force, the courts have found that such claims against unidentified officers could not withstand summary judgment.  *See, e.g., Combs v. Wilkinson,* 315 F.3d 548, 557 (6th Cir. 2002); *Skover v. Titchenell,* 408 F. Supp.2d 445, 451 (E.D. Mich. 2005).

---

[7]Although Plaintiff proposes to bridge this evidentiary gap by resort to the unsworn statements of three individuals who purportedly witnessed his arrest outside the Marz Bar, (*see* Plaintiff's Response, Exs. E, F, G), these statements fail in several respects to give rise to an issue of fact as to the involvement of Officer Konal or Officer Merlo in the events giving rise to this suit.  First, these statements "must be disregarded because a court may not consider unsworn statements when ruling on a motion for summary judgment."  *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 968-69 (6th Cir. 1991).  Next, these statements are ambiguous, at best, as to whether more than one police officer interacted with Plaintiff — one statement refers at one point to Plaintiff being "punched and stumped [sic] by the officers," (Plaintiff's Response, Ex. E), but the remaining two statements mention only the "police" and the various types of force that "they" inflicted upon Plaintiff.  Finally, the statements fail to provide any description whatsoever of the officer or officers who participated in Plaintiff's arrest, and these statements thus cannot supply the identifying detail that is absent from Plaintiff's deposition testimony.

In apparent recognition of this evidentiary deficiency, Plaintiff appeals to the legal principle that a police officer may be held liable if he fails to intervene in another officer's use of excessive force.  *See Smoak,* 460 F.3d at 784.  Yet, for this principle to apply, there must be an evidentiary basis upon which a trier of fact could conclude that Officer Konal or Officer Merlo was in a position to intervene in a fellow officer's infliction of excessive force.  Again, the unrefuted record shows that these two officers arrived at the scene only after Plaintiff had been arrested and handcuffed, and nothing in Plaintiff's testimony would permit a trier of fact to discount this record and instead conclude that one of these two officers did, in fact, stand by as another officer used excessive force to subdue and arrest Plaintiff.  Indeed, under Plaintiff's version of the events surrounding his arrest, each of the two officers on the scene ***actively participated*** in the infliction of excessive force.  This testimony, like the remainder of the record, provides no basis for charging either Officer Konal or Officer Merlo with liability for failing to intervene in a fellow officer's alleged use of excessive force.

**D.**     **Plaintiff Has Failed to Identify a Basis for Holding the Defendant City Liable Under 42 U.S.C. § 1983 for Any Alleged Violation of His Federal Constitutional Rights.**

Apart from his federal § 1983 claims against Officers Deal, Konal, and Merlo, Plaintiff also has asserted a § 1983 claim against the Defendant City of Eastpointe, alleging that this municipality is subject to liability for the federal constitutional violations allegedly committed by the three Defendant Eastpointe officers.  Through their present motion, Defendants argue that Plaintiff has failed as a matter of law to produce

24

evidence that would support the imposition of liability on the Defendant City under §
1983.  The Court agrees.

As both sides recognize, the Defendant City of Eastpointe "cannot be held liable
under § 1983 for an injury inflicted solely by its employees or agents."  *Gregory v. Shelby
County,* 220 F.3d 433, 441 (6th Cir. 2000) (citing *Monell v. Department of Social Servs.,*
436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978)).  Instead, "[f]or liability to attach, there
must be execution of a government's policy or custom which results in a constitutional
tort."  *Gregory,* 220 F.3d at 441.  Moreover, Plaintiff must establish that "through its
deliberate conduct, the municipality was the 'moving force' behind" the violation of his
constitutional rights — that is, he "must show that the municipal action was taken with
the requisite degree of culpability and must demonstrate a direct causal link between the
municipal action and the deprivation of federal rights."  *Gregory,* 220 F.3d at 442
(quoting *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 405, 117 S.
Ct. 1382, 1389 (1997)).

In this case, Plaintiff seeks to establish the requisite custom or policy by asserting
that the individual Defendant officers were inadequately trained and supervised.  As to
the first of these contentions, the Supreme Court has recognized that a local governmental
unit, such as the Defendant City here, may be subject to § 1983 liability under a "failure
to train" theory.  *See City of Canton v. Harris,* 489 U.S. 378, 388, 109 S. Ct. 1197, 1204
(1989).  The Court further emphasized, however, that this theory can succeed "[o]nly
where a municipality's failure to train its employees in a relevant respect evidences a

25

'deliberate indifference' to the rights of its inhabitants."  *City of Canton,* 489 U.S. at 389,

109 S. Ct. at 1205.  This standard, in turn, can be met by showing that "in light of the

duties assigned to specific officers or employees the need for more or different training is

so obvious, and the inadequacy so likely to result in the violation of constitutional rights,

that the policymakers of the city can reasonably be said to have been deliberately

indifferent to the need."  489 U.S. at 390, 109 S. Ct. at 1205.  Finally, the Court stated

that "for liability to attach in this circumstance the identified deficiency in a city's

training program must be closely related to the ultimate injury."  489 U.S. at 391, 109 S.

Ct. at 1206.

 The record in this case not only fails to support Plaintiff's claim of inadequate

training, but largely refutes it.  While Plaintiff characterizes Officer Merlo as having

testified that "he could not recall the last time he had use of force training" and "that it

had been a while," (Plaintiff's Response Br. at 19), Officer Merlo actually stated at his

deposition that although it had "been awhile" since he had attended an "actual eight-hour

block of training" on the use of force, he reviewed the department's policies and

procedures regarding the use of force "on a regular basis," (Plaintiff's Response, Ex. B,

Merlo Dep. at 10-11).  Likewise, Officer Konal testified that he had received use-of-force

training "[p]eriodically throughout my 22 years of police work," and that "we train [on

the use of force] on a regular basis," (Plaintiff's Response, Ex. C, Konal Dep. at 8), and

Officer Deal testified that, except for his time away from work due to an injury, he had

received "regular" training on the use of force, (Plaintiff's Response, Ex. D, Deal Dep. at

10).  More generally, the Deputy Chief of the Eastpointe Police Department, Scott

Bourgeois, has stated in an affidavit that "[a]ll Eastpointe Police Officers receive regular

and continuous training after [their] hir[ing] regarding the proper use of force," and that

"[t]he Eastpointe Police Department has an established policy regarding the proper use of

force and officers are trained regularly regarding that policy."  (Defendants' Motion, Ex.

O, Bourgeois Aff. at ¶¶ 4, 6.)

        This record indicates that the Defendant police officers were, in fact, trained in the

appropriate use of force, and Plaintiff has made no effort to show otherwise.  To the

extent Plaintiff means to suggest, at least implicitly, that this training could or should

have been conducted more frequently, he has not even attempted to identify any

evidentiary basis upon which a trier of fact could conclude that the need for more

frequent training was obvious, or that the existing training regimen was likely to result in

the unlawful use of force.  *See Miller v. Calhoun County,* 408 F.3d 803, 816 (6th Cir.

2005) ("Mere allegations that an officer was improperly trained or that an injury could

have been avoided with better training are insufficient to prove liability.").  Most notably,

Plaintiff has not produced evidence of any prior incidents that might have alerted the

Defendant City to the need to reassess its program for training its officers in the proper

use of force.  *See Plinton v. County of Summit,* 540 F.3d 459, 464 (6th Cir. 2008) (citing

evidence of prior instances of unconstitutional conduct as the ordinary means by which a

plaintiff may satisfy the deliberate indifference standard for municipal liability).

Accordingly, Plaintiff has failed to identify any basis in the record for holding the

Defendant City liable under a "failure to train" theory.

Plaintiff's second theory of municipal liability is that the Defendant officers were inadequately supervised, but this assertion, too, lacks support in the evidentiary record. In claiming that the Defendant City has altogether "fail[ed] to review its police officers' performance on the job," thereby "permit[ting] officers to continuously violate citizens' constitutional rights," Plaintiff points to the deposition testimony of the Defendant officers as purportedly establishing that the Defendant City "has not conducted any really meaningful performance evaluations" of its officers. (Plaintiff's Response Br. at 18.) Yet, Officer Merlo testified that his commanding officer evaluates his performance "every three months," (Merlo Dep. at 8), and Officer Konal likewise testified that he receives performance evaluations "every three months" that include an assessment of his "work performance," (Konal Dep. at 8). Officer Deal, for his part, recalled that it had been "[o]ver two years" since a supervisor had evaluated his performance, and that he would "sporadic[ally]" be advised of areas in which he was doing well or areas for improvement. (Deal Dep. at 9-10.)

Even assuming that this testimony could be construed as evidencing a shortage of "really meaningful" performance reviews, or as suggesting that the Defendant City could or should have conducted more frequent or more searching reviews of the performance of its officers, Plaintiff has failed to produce evidence from which it could be concluded that the Defendant City's practice of evaluating the performance of its officers was so deficient as to evidence the City's deliberate indifference to the constitutional rights of its

citizens.  In the lone case cited by Plaintiff in support of his "failure to supervise" theory, the record was "devoid of any performance evaluations" of one of the defendant officers over his 32 years of service, despite complaints about this officer's performance by citizens and fellow officers.  *Kammeyer v. City of Sharonville,* No. 01-00649, 2006 WL 1133241, at *11 (S.D. Ohio Apr. 26, 2006).  Here, in contrast, the three Defendant officers have testified that they received at least occasional evaluations of their performance, and nothing in the record suggests that any complaints about the performance of these (or any other) officers have been ignored or that violations of the rights of citizens have gone unpunished.  Moreover, despite Plaintiff's counsel's wholly unsupported and irresponsible charge of "continuous[]" constitutional violations committed by the Defendant City's officers, Plaintiff has utterly failed to identify any evidentiary basis for concluding that a more frequent or otherwise different practice of conducting performance reviews would have uncovered misconduct by any of the Defendant officers — much less a form of misconduct similar to that claimed by Plaintiff here — such that the Defendant City would have been on notice of the need for additional or closer supervision.  *See Marcilis v. Redford Township,* 757 F. Supp.2d 663, 682 (E.D. Mich. 2010) (distinguishing *Kammeyer* on this ground); *Garigiola v. City of Brighton,* No. 08-13763, 2010 WL 104605, at *6 (E.D. Mich. Jan. 7, 2010) (same).  Accordingly, the Court readily concludes that Plaintiff's "failure to supervise" theory of liability against the Defendant City, like his "failure to train" theory, lacks support in the evidentiary record.

**E.      Issues of Fact Remain as to Plaintiff's State-Law Claim of Assault and Battery Against the Sole Remaining Individual Defendant, Officer Deal.**

Next, in Count III of his complaint, Plaintiff has asserted a state-law claim of assault and battery against the three individual police officers named as Defendants.  As discussed earlier, the claims against two of these Defendants, Officers Merlo and Konal, cannot go forward, in light of the absence of evidence of their involvement or opportunity to intervene in the incidents giving rise to Plaintiff's claims.  As to the remaining individual Defendant, Officer Deal, Defendants argue in their present motion that Plaintiff's claim of assault and battery against this officer lacks factual support.  The Court disagrees, on much the same grounds cited earlier in the Court's analysis of Plaintiff's federal § 1983 claim of excessive force.

In challenging the viability of this state-law claim, Defendants contend that the record establishes as a matter of law that Officer Deal used only the degree of force that was reasonable and necessary to effectuate Plaintiff's arrest.  This argument rests primarily on the contention that Plaintiff's account of the events surrounding his October 2, 2009 arrest is "unreliable, internally inconsistent and contradicted by other evidence in the record."  (Defendants' Motion, Br. in Support at 12.)  Defendants point, for example, to Plaintiff's acknowledgment that he was intoxicated on the night of his arrest, and the statements of his counsel at his state court plea hearing that he is susceptible to blackouts when he drinks and that his "recollection of this incident, of this whole night, i[s] very vague."  (Defendants' Motion, Ex. I, 10/16/2009 Plea Hearing Tr. at 8.)  Defendants also

30

cite inconsistencies in Plaintiff's deposition testimony, such as his contradictory statements that he may or may not have had a blanket over his head as the bouncers escorted him out of the Marz Bar, and that the officers who assaulted him may or may not have been wearing blue uniforms.  Defendants further observe that Plaintiff's account of his arrest is refuted by the consistent testimony of Officer Deal and two of the bouncers who escorted Plaintiff out of the Marz Bar, each of whom has stated that Officer Deal used no gratuitous or unnecessary force against Plaintiff, but instead employed his taser a single time after Plaintiff repeatedly refused to follow his orders and then promptly handcuffed Plaintiff upon securing his compliance.

Under the present procedural posture of this case, however, the Court is not at liberty to simply discount Plaintiff's version of events as a basis for determining as a matter of law that Officer Deal employed only a reasonable and necessary degree of force in effectuating Plaintiff's arrest.  Although Plaintiff's testimony admittedly is internally inconsistent and contradictory as to certain details, the Sixth Circuit has emphasized that "in reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited." *Schreiber,* 596 F.3d at 333 (internal quotation marks, alteration, and citation omitted).  This principle holds true "even when the nonmovant's account is contradictory," because such inconsistencies in a plaintiff's version of events "go to the weight of [his] testimony, not its admissibility." *Schreiber,* 596 F.3d at 333-34 (internal quotation marks and citations omitted); *see also Coble v. City of White House,* 634 F.3d 865, 870 (6th Cir. 2011) ("Even if part of [the plaintiff's] testimony is blatantly

31

contradicted by the audio recording [of his arrest], that does not permit the district court to discredit his entire version of the events."). Accordingly, while Defendants will have ample fodder at trial for challenging Plaintiff's credibility, the Court must accept Plaintiff's testimony as true for present purposes, and it is clear that this testimony, if credited, would permit the conclusion that the amount of force allegedly used in effectuating Plaintiff's arrest was excessive. *See, e.g., Hagans v. Franklin County Sheriff's Office,* 695 F.3d 505, 509 (6th Cir. 2012) (citing a line of Sixth Circuit case law establishing that the use of a taser on a compliant subject who has stopped resisting constitutes excessive force).

Defendants next contend that Plaintiff may not seek to relitigate the facts and circumstances surrounding his arrest, in light of his counsel's stipulation to Officer Deal's police report as a factual basis for Plaintiff's plea of no contest to a state-law charge of resisting and obstructing a police officer. As explained earlier, however, Michigan law does not accord preclusive effect to the facts underlying a plea of no contest. It follows that Plaintiff's plea and conviction do not foreclose him from establishing a factual basis for his state-law claim of assault and battery against Officer Deal.

**F.     The Record Defeats Plaintiff's State-Law Claim of Gross Negligence.**

Finally, in Count IV of his complaint, Plaintiff has asserted a state-law claim of gross negligence against each of the three Defendant officers. As previously explained, the record fails to support any such claim against Officers Merlo or Konal. Defendants further contend that such a claim may not go forward against Officer Deal, where the

32

intentional acts allegedly committed by this Defendant are legally inconsistent with a theory of gross negligence.  The Court agrees.

In *VanVorous v. Burmeister,* 262 Mich. App. 467, 687 N.W.2d 132, 143 (2004), the Michigan Court of Appeals held that the plaintiff could not go forward with a claim of gross negligence that was "fully premised on her claim of excessive force."  In so ruling, the court explained that it had previously "rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence."  *VanVorous,* 687 N.W.2d at 143.  More recently, the Sixth Circuit followed *VanVorous* in holding that the plaintiff's allegations of excessive force could not support a claim of gross negligence under Michigan law, and that "[t]he only [state-law] cause of action available to plaintiff for allegations of this nature would be for assault and battery."  *Bletz v. Gribble,* 641 F.3d 743, 756 (6th Cir. 2011).

The reasoning of these cases is fully applicable here.  The conduct allegedly engaged in by Officer Deal, as identified by Plaintiff in his complaint and at his deposition, is undeniably characterized as intentional, with this officer purportedly having thrown Plaintiff to the ground, punched and kicked him, and applied a taser to his back even though Plaintiff had already been handcuffed and was not resisting the officer's directives.  Although Plaintiff suggests that a claim of gross negligence remains available where a defendant police officer "fails to intervene on behalf of an injured plaintiff," (Plaintiff's Response Br. at 16), the Court explained earlier that the facts as alleged and testified to by Plaintiff here do not support this theory of failure to intervene, particularly

33

as to Officer Deal.  Instead, Plaintiff has testified that this officer actively and

intentionally inflicted injury on him by punching, kicking, and stomping on him, and by

employing a taser on him after he had been restrained in handcuffs.  Under this record,

Michigan law does not permit Plaintiff to pursue a claim of gross negligence, but instead

dictates that he proceed solely under a theory of assault and battery.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' July 31, 2012

motion for summary judgment (docket #45) is GRANTED IN PART, as to Plaintiff's

claims against Defendants City of Eastpointe, Officer Merlo, and Officer Konal, and as to

the state-law claim of gross negligence asserted in Count IV of Plaintiff's complaint.

Defendants' motion is otherwise DENIED, with Plaintiff permitted to go forward with his

Count I claim of excessive force under 42 U.S.C. § 1983 against Defendant Officer Brian

Deal, as well as his state-law claim of assault and battery against this same Defendant.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  August 30, 2013

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on August 30, 2013, by electronic and/or ordinary mail.


s/Julie Owens
Case Manager, (313) 234-5135